## TUCKER MONMOUTH V. THE STATE.

### No. 4109.   Decided October 28, 1908.

**Murder—Charge of Court—Murder in the Second Degree—Circumstantial Evidence.**

Upon trial for murder where the evidence showed that defendant had made diverse and sundry threats to kill deceased for injuring his horses; that he was seen going in the direction of where the deceased was found, a short while before the homicide; that the tracks from and to his home and the place of the homicide showed that he had made the same, since they fit his shoes; that he could not have killed the deceased with implied malice but that he killed him because he injured his horses, a charge on murder in the second degree was not required, although the evidence was circumstantial.

Appeal from the District Court of Cherokee.   Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*W. E. Donley* and *L. D. Guinn,* for appellant.—On question of murder in the second degree: Blocker v. State, 27 Texas Crim. App., 16; Jones v. State, 29 Texas Crim. App., 338; Hill v. State, 5 Texas Crim. App., 2; Galtin v. State, 5 Texas Crim. App., 531; Holden v. State, 1 Texas Crim. App., 225, and cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at life imprisonment in the penitentiary.

The facts, in substance, show that appellant is charged with killing Wade Chandler on the 13th day of December, 1907. The record discloses, in substance, the following facts: The defendant had some horses that were injured by some one cutting and stabbing them with some sharp instrument. One of the horses died. He suspected deceased of injuring the animals. He made divers and sundry threats to wreak vengeance and kill deceased for said supposed acts. Deceased was killed within a few hundred yards of appellant's home. The tracks that were seen around the place of the homicide, leading from and to appellant's home, corresponded exactly in size and shape with appellant's tracks. The facts further show that deceased was riding a mule along the road and whoever shot him stood behind a stump about six feet high twenty-five or thirty feet away from where deceased was found lying. The day after his death gun wadding was picked up between the stump and where deceased was lying. Deceased received two wounds from a gun and one or two from a pistol. In addition to the above

Nobe Clark testified: "I knew deceased in his lifetime, and know Tucker Monmouth. One day defendant and I were cutting wood together. Defendant told me that he thought deceased cut one horse and killed the other. While we were cutting wood an old man named Summers passed along on Friday, the day deceased was killed, and defendant remarked that he thought it was Wade Chandler, and said, 'If that is the damn son-of-a-bitch I will kill him and put him in the well.' When defendant made this remark he went near the old man, and returned saying it was old man Summers. Summers was two or three hundred yards from where we were at the time defendant made the remark. Deceased was the next person that passed there. It was about 10 or 11 o'clock in the morning when he passed. Deceased came within 25 steps of us where we were cutting wood. Deceased spoke when he passed, said 'Good morning.' I spoke to him. I don't know for certain whether appellant spoke to him or not, but I think he did. When deceased passed appellant said, 'Now is my time to get him. I have taken all off of him that I am going to.' And appellant then went off towards home; he went on towards home in a few minutes after deceased passed. When appellant started off he said, 'Now is the time to get him.' That is all he said that I can recollect. He went off in the direction of where Mr. Scarbrough, Mr. Bolton and Mr. Miller lived, and defendant lived the other side of Mr. Miller's. He was going towards Mr. Bolton's house when he started off, up that way. I think old man Bolton owned a shotgun and I think I have seen the defendant with his gun before that. Mr. Bolton's gun was a 12-gauge breech-loading shotgun, double barrel." No one saw the killing, but the body was found in the general direction of where appellant went.

This is a case of circumstantial evidence. The charge of the court was proper, and there is no error requiring review save and except the question as to whether or not the court erred in failing to charge on murder in the second degree. In Benevides v. State, 14 Texas Crim. App., 378; Blocker v. State, 27 Texas Crim. App., 16; Smith v. State, 15 Texas Crim. App., 139, and Nalley v. State, 28 Texas Crim. App., 387, it is held that it is a very rare case in which a charge of murder in the second degree may be properly dispensed with, but in the Nalley case, supra, it was held that it is only where there is no evidence tending to present that issue that such a charge may be safely omitted. We hold that the evidence in this case does not present that issue. Here the defendant had made divers and sundry threats to kill deceased for injuring his horses. He was seen going in the direction of where the deceased was found, a short while before the homicide. The tracks from and to his home and the place of the homicide show that he had made same since they fit his shoes, and if he killed deceased, which the evidence is sufficiently strong to show, then he could not have had

implied malice, but he killed him because deceased had injured his horses. The facts show a cold deliberate assassination by lying in wait. We accordingly hold that there is no murder in the second degree in this case, and that the court did not err in failing to charge on same. Some of the decisions of this court seem to indicate that there is a distinction, in reference to charging murder in the second degree, between a case of circumstantial evidence and positive testimony. But this matter, we take it, is set at rest by the case Pearl v. State, 43 Texas Crim. Rep., 189. There, after a review of many of the authorities, this court held that there is no distinction between circumstantial and positive testimony in reference to charges. Unless the evidence suggest the issue in some shape, it is never necessary for the court to charge on murder in the second degree at all.

The other assignments of error in appellant's brief we deem it unnecessary to review.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Ramsey, Judge, absent.

[Motion for rehearing denied.—Reporter.]